[Civ. No. 10362. Third Dist. Feb. 5, 1963.]

OSWALT STEINBRENNER, Plaintiff and Respondent, v.
J. A. WATERBURY CONSTRUCTION COMPANY
et al., Defendants and Appellants.

Sedgwick, Detert, Moran & Arnold and John S. Howell
for Defendants and Appellants.

McGilvray & McGilvray, Kenneth McGilvray and W. Austin
Cooper for Plaintiff and Respondent.

FRIEDMAN, J.—Plaintiff sues defendant Waterbury Construction Company and its surety, Massachusetts Bonding and Insurance Company, for the price of certain millwork and cabinets furnished Waterbury as a general contractor. Waterbury having become insolvent, plaintiff's action was brought pursuant to Code of Civil Procedure sections 1190.1 and 1192.1. In response to counsel's request a separate hearing was held on the special defense that plaintiff was barred from maintaining the action on the ground that he did not hold a contractor's license as required by Business and Professions Code section 7031.

The trial court found that plaintiff "only 'furnished materials and supplies' " within the meaning of Business and Professions Code section 7052; that he was a "materialman" and not a contractor, and therefore was not required to be licensed. Judgment was entered accordingly and this appeal followed. The question on appeal is whether the activities of plaintiff under his contract with defendant Waterbury brought him within the licensing provisions of the Contractors' Licensing Law, thus barring him from maintaining an action to recover money due under his contract.

Section 7031 of the Business and Professions Code provides: "No person engaged in the business of acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract. . . ."

Section 7026 provides: "The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person, who undertakes to or offers to undertake to . . . construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building . . . or other structure, project development or improvement, or to do any part thereof. . . . The term contractor includes subcontractor and specialty contractor."

Waterbury was the general contractor under a contract with the Orangevale School District. Plaintiff, who was the owner and manager of a planing mill located in Sacramento, entered into an agreement with Waterbury to furnish certain millwork such as doors, trim, plywood and manufactured

cabinets. All necessary fabrication was done at plaintiff's plant and delivered to the construction site where all installation was made by Waterbury's employees. All the materials were fabricated in accordance with shop drawings submitted by plaintiff and approved by the architect in charge. The contract itself was on a printed Sacramento Builders' Exchange form, labeled, "Sub-Contract Agreement," in which plaintiff was referred to as "the Sub-Contractor." This document recited that plaintiff would furnish "all material, labor, supervision, tools, appliances, permits, and certificates necessary to construct and complete . . . in strict accordance with said plans and specifications. . . . Mill work complete." Only the last three words were added to the printed form.

Research discloses no judicial precedent dealing with the relationship of the Contractors' Licensing Law to the millwork and cabinet industry. The classification of specialty contractor adopted by the registrar of contractors (Cal. Admin. Code, tit. 16, § 744) includes cabinet and millwork concerns ". . . whose principal contracting business is the execution of contracts, usually subcontracts . . . under an agreed specification . . . including the placing, erecting, fabricating and finishing in buildings, structures and elsewhere of such cabinet and millwork, or to do any part or combination of any thereof."

The specialty classifications adopted by the registrar of contractors cannot and do not purport to extend the scope of the licensing statute. Common to all these classifications is the underlying notion that various specialized building trades fall within the statute, and within one or another of the specialized types of contracting, when the firm or supplier fabricates his products into the construction work in a permanent fashion, effecting some substantial change in the structure.

The trial court relied upon a number of cases holding that one is a materialman and not a subcontractor unless he makes a substantial "on the site" contribution. (See annotation, 141 AL.R. 321.) Another point of reliance was *Cargill* v. *Achziger*, 165 Cal.App.2d 220 [331 P.2d 774], in which this court, speaking through Schottky, J., said: "There is nothing in the chapter requiring the licensing of contractors which precludes one from furnishing materials as a supplier and then installing them as an employee." (P. 223.)

On its face the matter is quite simple. Section 7052

of the Business and Professions Code excludes application of the licensing law under the following circumstances: "This chapter does not apply to any person who only furnishes materials or supplies without fabricating them into, or consuming them in the performance of, the work of the contractor." Steinbrenner was building cabinets designed for the particular building and not of the standard or "open stock" variety. He performed no installation work. His employees delivered the finished cabinets at the job site where they were installed by Waterbury, the general contractor. Steinbrenner was doing nothing other than furnishing materials, albeit custom-designed and custom-produced, "without fabricating them into, or consuming them in the performance of, the work of the contractor." *Ergo,* Steinbrenner's activities were exempted by section 7052. To be sure, the products were ultimately fabricated or "consumed," but that event occurred at the hands of Waterbury the licensed contractor, not Steinbrenner the unlicensed supplier.

A somewhat comparable exclusion is provided by section 7045. At the time of the transaction before us it provided: "This chapter does not apply to the sale or installation of any finished products, materials or articles of merchandise, which are not actually fabricated into and do not become a permanent fixed part of the structure." Seemingly overlapping with section 7052, section 7045 is aimed at a different type of fringe activity, the supplier who does more than deliver to the job, who actually installs his products. Nevertheless he need not be licensed so long as his installation does not become a permanent fixed part of the structure. Section 7045 has been applied to installer-suppliers of kitchen sink units and cold storage machinery. (*E. A. Davis & Co.* v. *Richards,* 120 Cal. App.2d 237 [260 P.2d 805]; *Costello* v. *Campbell,* 81 Cal. App.2d 452 [184 P.2d 315].) Since plaintiff did no installation whatever, his appropriate resort is to section 7052 rather than section 7045.

At the 1961 legislative session, subsequent to the trial court's decision in this case, section 7045 was amended and the following clause added: ". . . nor shall it [the Contractors' Licensing Law] apply to a materialman or manufacturer furnishing finished products, materials, or articles of merchandise who does not install such items."

Notwithstanding the apparent application of the exclusion in section 7052, defendants point to *Theisen* v. *County of Los Angeles,* 54 Cal.2d 170 [5 Cal.Rptr. 161, 352 P.2d 529],

decided by the Supreme Court after the trial court's decision in the present action. In that case one Petterson contracted with the general contractor to supply custom-made doors in accordance with architect's specifications. The primary contractor took delivery of all the doors at Petterson's plant. The question was whether Petterson was a "subcontractor" within the scope of the mechanics' lien law and stop notice statute. (Code Civ. Proc., § 1182, subd. (e).) Holding that he was indeed a subcontractor, the court stated:

"In our opinion the essential feature which constitutes one a subcontractor rather than a materialman is that in the course of performance of the prime contract he constructs a definite, substantial part of the work of improvement in accord with the plans and specifications of such contract, not that he enters upon the job site and does the construction there. We are not here concerned with the mere furnishing of materials from which doors were to be constructed by the general contractor nor are we interested in the sale of standard stock-in-trade doors. Specifically we are dealing with a contract whereby the doors were to be fabricated according to the specifications of the prime contract and as a constituent part of the construction of the public improvement which was the subject of the contract. We do not accept the view of some other jurisdictions (see annotation, 141 A.L.R. 321) that to be a subcontractor one must install work at the site of the improvement. Rather, we conclude that one who agrees with the prime contractor to perform a substantial specified portion of the work of construction which is the subject of the general contract in accord with the plans and specifications by which the prime contractor is bound has 'charge of the construction' of that part of the work of improvement (Code Civ. Proc., § 1182, subd. (c) ) and is a subcontractor although he does not undertake to himself incorporate such portion of the projected structure into the building." (P. 183.)

Defendants' reliance on *Theisen* is misplaced. It supplies no precedent here, only an analogy. It is not a precedent because it interprets a different statute, the mechanics' lien law, which has a different objective from the Contractors' Licensing Law. It is a truism of statutory construction that a statute is to receive an interpretation consistent with its own purpose. (*California Drive-In Restaurant Assn.* v. *Clark*, 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028].)

In *Theisen* the "subcontractor" concept received a broad interpretation, consistent with the law's purpose to provide financial security for suppliers who do no installation work themselves, but whose custom-made products have little economic value except as part of the building for which they were designed. ▮▮▮ The contractors' law has a different objective, protection of the public from incompetent and unreliable contractors. Interpretation of one statute supplies no talisman for defining the other.

An eminent authority on statutory construction discusses the use of interpretation by reference to analogous but unrelated statutes. He points out that the device is to be used with caution "for the reason that by way of contrast an inclusion or exclusion may show an intent exactly contrary to that expressed by the analogous legislation." (3 Sutherland, Statutory Construction [3d ed. 1943] § 6104, pp. 161-162.)

So it is here. Business and Professions Code section 7052 distinctly excludes suppliers who do not themselves fabricate or "consume" their materials in the work of the general contractor. While *Theisen* supplies an interesting analogy, it cannot overcome section 7052. The latter provision in no uncertain fashion excludes Steinbrenner's cabinet-making activities from the scope of the licensing law.

Possibly the 1961 amendment to section 7045 was enacted to demonstrate that *Theisen* v. *County of Los Angeles, supra,* supplies no rule for contractors' licensing requirements. On this score we have no information. The 1961 amendment, plainly excluding transactions such as that before us, suggests an alternative ground of decision. In *McBarron* v. *Kimball,* 210 Cal.App.2d 218 [26 Cal.Rptr. 379], there was a suit by a contractor who allegedly violated the licensing law. Pending his appeal, the law was amended to withdraw the license requirement. Holding that section 7031, preventing suits by unlicensed contractors, was a procedural statute relating to civil actions, the court applied the narrow licensing law existing at the time of its decision rather than the broader law existing at the time of the transaction. Possibly, then, the 1961 amendment to section 7045 applies here. In any event, we are satisfied that plaintiff's activity was at all times exempted by section 7052.

Judgment affirmed.

Schottky, Acting P. J., and Brown, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.