[No. 505-2.    Division Two.    April 26, 1972.]

HARBOR MILLWORK, INC., *Respondent*, v. JACK W.
ACHTTIEN *et al.*, *Appellants*.

*Julian C. Dewell* (of *Anderson, Hunter, Carlson & Dewell*), for appellants.

*Omar S. Parker* (of *Parker & Johnson*), for respondent.

ARMSTRONG, J.—Harbor Millwork, Inc. brought suit against Mr. and Mrs. Jack W. Achttien, homeowners, for the balance owing on certain millwork furnished the homeowners in connection with the building of their new home on Hood Canal. The defendant-homeowners now appeal from a judgment in favor of Harbor Millwork awarding it compensation for labor and materials and foreclosure of a lien on the homeowner's residence. For convenience, the homeowners will be referred to in the singular.

The determinative question on appeal is whether the activities of Harbor Millwork under its agreement with the homeowner brought it within the registration provisions of the contractor's registration act, RCW 18.27, thus barring it from maintaining an action to recover the balance owing under the contract.

Harbor Millwork, a Hoquiam based corporation, entered into an oral agreement with the homeowner to furnish, for a reasonable value, certain millwork such as doors, door jambs, valances, handrails and a wide variety of custom-made cabinets in connection with the construction of defendant's new home. Although it is not clear from the record, there was testimony to the effect that the homeowner and a hired carpenter-foreman, William Palmer, were acting as the primary contractors on the project. The various items of millwork fabricated by Harbor Millwork were made in accordance with sketch drawings and fabricated at Harbor Millwork's plant. Upon their completion, these items were then delivered by Harbor Millwork to the construction site. The doors, door jambs, valances and handrails were installed completely by the homeowner and his carpenter-foreman. The homeowner and his carpenter-foreman also played a significant role in assisting in the installation of the kitchen cabinets. The remainder of the cabinetry items were installed by Harbor Millwork's employees.

Shortly after the cabinets and other millwork had been installed, a dispute arose as to the quantity, quality and reasonable value of the labor and material furnished by Harbor Millwork. Harbor Millwork then brought suit to recover the remaining balance due under the agreement and to foreclose a lien. At the trial, the homeowner, in addition to challenging the reasonableness of Harbor Millwork's bill, also defended on the ground that Harbor Millwork was not registered as a contractor under RCW 18.27 of our contractor's registration act. He further contended that none of the statutory exemptions under the act were applicable and accordingly that Harbor Millwork should be barred from bringing suit.

The findings of fact and conclusions of law of the trial court make no reference to the contractor's registration act or the exceptions to compliance with the terms of the act. They are couched in the usual terms of foreclosure of a lien for furnishing labor and materials. The court held that Harbor Millwork was entitled to foreclose its lien and entered a judgment against the homeowner accordingly.

The homeowner contends that Harbor Millwork was a contractor as defined by RCW 18.27.010,[1] and was therefore

---

[1] RCW 18.27.010 provides: "A 'contractor' as used in this chapter is any person, firm or corporation who or which, in the pursuit of an independent business undertakes to, or offers to undertake, or submits a bid to, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish, for another, any building, highway, road, railroad, excavation or other structure, project, development or improvement attached to real estate or to do any part thereof including the erection of scaffolding or other structures or works in connection therewith; or, who, to do similar work upon his own property, employs members of more than one trade upon a single job or project or under a single building permit except as otherwise provided herein. A 'general contractor' is a contractor whose business operations require the use of more than two unrelated building trades or crafts whose work the contractor shall superintend or do in whole or in part; the term 'general contractor' shall not include an individual who does all work personally without employees or other 'specialty contractors' as defined herein. The terms 'general contractor' and 'builder' are synonymous. A 'specialty contractor' is a contractor whose operations as such do not fall within the foregoing definition of 'general contractor'."

obliged under RCW 18.27.080[2] to comply with the contractor's registration act before it could contract to perform or sue to collect for the cabinets and other millwork fabricated at Harbor Millwork's mill. The homeowner's contentions are based on his interpretations of RCW 18.27, *et seq.*, of our Business and Professions Code pertaining to the registration of contractors. We agree that Harbor Millwork would be subject to that act unless specifically exempted by one of the exceptions to compliance with the act.

■ As a general practice RCW 18.27, *et seq.*, of our Business and Professions Code requires a contractor to obtain a license to engage in building enterprises. Our contractor's registration act was designed to prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states. Public protection was sought by the registration and bonding of contractors. RCW 18.27.020-.040 inclusive. Noncompliance was discouraged by providing a criminal penalty, RCW 18.27.020, and by denying offenders access to the courts for collection of compensation for performance of work or for breach of contract. RCW 18.27.040. *Stewart v. Hammond,* 78 Wn.2d 216, 471 P.2d 90 (1970).

■ There are, however, exemptions provided in the act which excuse registration under certain circumstances. Two exemptions under the act are relevant in the instant case. The first one, RCW 18.27.090(8) provides as follows:

This chapter shall not apply to:

. . .

(8) Any person who only furnished materials, supplies or equipment without fabricating them into, or consuming them in the performance of, the work of the contractor;

---

[2]RCW 18.27.080 provides: "No person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor at the time he contracted for the performance of such work or entered into such contract."

A similar exemption was construed by the California Court of Appeals in *Steinbrenner v. J. A. Waterbury Constr. Co.,* 212 Cal. App. 2d 661, 28 Cal. Rptr. 204 (1963). That case involved facts substantially similar to the instant case with the exception that in *Steinbrenner* the millwork and cabinets furnished were installed in their entirety by the general contractor. The court held in that case that plaintiff qualified under section 7052 of the California Business and Professions Code, the almost identical equivalent to our own RCW 18.27.090(8), and need not register under the act. The court reasoned that although the cabinet-maker had custom designed and produced the cabinets to fit the special needs of the purchaser, since there was no installation by the cabinetmaker, he was merely *furnishing* material, supplies and equipment "without fabricating them into, or consuming them in the performance of the work." We adopt this rationale.

As noted earlier, a portion of the items furnished defendant in the instant case included doors, door jambs, hand-rails and valances. The facts are undisputed that in regard to these items plaintiff performed no installation whatsoever. These items were delivered to the defendant's residence where they were installed by defendant and his carpenter. Any fabrication done at the hands of plaintiff occurred entirely at plaintiff's plant. Thus, in regard to these items, plaintiff was doing nothing other than furnishing materials, albeit custom designed and produced, "without fabricating them *into,* or consuming them in the performance of, the work of the contractor." (Italics ours.) Clearly, under the reasoning in *Steinbrenner v. J. A. Waterbury Constr. Co., supra,* plaintiff in the instant case was exempted under RCW 18.27.090(8) with regard to the doors, door jambs, handrails and valances.

■ We next inquire as to whether the cabinetmaker occupied an exempt status as to the cabinets he actually installed at the purchaser's home. In this regard we believe that RCW 18.27.090(5) is relevant. This section provides:

This chapter shall not apply to:

. . .

(5) The sale or installation of any finished products, materials or articles of merchandise which are not actually fabricated into and do not become a permanent fixed part of a structure;

As noted by cases from other jurisdictions this latter type of exemption is aimed at a different type of fringe activity, the supplier who does more than deliver to the job site—who actually installs his products. Nevertheless, he need not be licensed as long as his installation is not fabricated *into* and does not become a permanent fixed part of the structure. *Steinbrenner v. J. A. Waterbury Constr. Co., supra.*

The California court interpreted and applied an almost identical exemption in the case of *E. A. Davis & Co. v. Richards,* 120 Cal. App. 2d 237, 260 P.2d 805 (1953). In that case plaintiff sued to recover the unpaid balance due on a sale and installation of a patented kitchen unit consisting of seven steel wall cabinets, six steel base cabinets, one dishwasher and one sink assembly with garbage disposal. All these were prefabricated and were attached to the floor and the walls by the employees of the supplier of the items. The court held that the cabinets were prefabricated and a finished product and that they were not actually fabricated into nor did they become a permanent fixed part of the defendant's kitchen. It also found that the minor plumbing and electrical wiring was a necessary part of the installation of the finished kitchen cabinets. In reaching this conclusion the court relied upon its determination that all of the trial court's findings of fact were based upon competent and substantial evidence.

The same exemption was also held to exempt the installer-supplier of cold storage machinery in *Costello v. Campbell,* 81 Cal. App. 2d 452, 184 P.2d 315 (1947). The court held that whether a particular installation came within the exemption was a simple question of fact. Upon substantial evidence the trial court found that the equipment did not become a permanent fixed part of the premises.

The cabinetry in the instant case consisted of bedroom furniture, gun cabinets, storage and television trays and a wide range of various types of cabinets for the garage, family room, kitchen, beach room and utility areas. The cabinets were constructed in their entirety at plaintiff's mill. Upon their completion they were then delivered to the defendant's residence where they were installed by plaintiff's employees who fitted the various cabinetry items into place through a process known as scribing. In his testimony, plaintiff's foreman pointed out that no two walls are exactly alike and that therefore an excess is built onto the ends and top of each cabinet at the mill. Then, at the place of installation, the excess is cut or scribed in order to enable the cabinet to achieve a form fit against a wall or designated irregular surface. Thus, the process of scribing is a refining phase of the fitting process necessarily incident to the installation of cabinetry. The record further shows that in the majority of instances the primary means of attaching the cabinets to the walls was by use of screws. The defendant's carpenter stated that in some instances. cabinets were also nailed into place. In other instances, as in the kitchen, the cabinets were bolted into sockets and held in place by lag screws. Defendant and his carpenter played a major role in assisting in the installation of the kitchen cabinets, having put down the recess into which the kitchen cabinets were subsequently bolted.

In interpreting the requirements of the exemption set forth in RCW 18.27.090(5), it is clear that "fabricate into" means something other than mere attachment. The supplier who actually installs finished products is required to perform a certain amount of fabrication to make the product operational or functional. Nevertheless, he is exempt from registration as a contractor unless the finished product is actually "fabricated into" and becomes a "permanent fixed part of a structure." There is no easy formula by which it can be determined that something has or has not become "fabricated into" and a "permanent fixed part of a struc-

ture." Accordingly, each case must be decided on its own facts.

■ There is undisputed evidence that the items of millwork and cabinets which were merely delivered to the homeowner, and installed by the homeowner's carpenter, were exempted by section 8. There is substantial evidence to support a finding of fact that the items of cabinetwork installed by Harbor Millwork would be exempted by section 5—but we cannot say that it is undisputed. Since there were no findings of fact with reference to items installed by Harbor Millwork and no reference to the exemptions to the contractor's registration act, we are remanding the cause to the trial court to determine whether those items were fabricated into and became a permanent part of the house in accordance with the requirements of RCW 18.27.090(5).

Defendant next contends that if plaintiff is exempted under the contractor's act, on the theory that he did not fabricate the millwork into defendant's residence, then he is not entitled to a lien, since the labor and materials lienable under the lien statute are limited to labor and materials for fixtures only. We do not agree with this contention.

■ As was stated in *Finley-Gordon Carpet Co. v. Bay Shore Homes, Inc.*, 247 Cal. App. 2d 131, 55 Cal. Rptr. 378 (1966), there is neither compelling reason nor authority to indicate why the law of fixtures should be incorporated into the legislature's design for registering contractors. Further, the materialmen's lien law has a different objective from the contractor's registration act. It is a truism of statutory construction that a statute is to receive an interpretation consistent with its own purpose. *Wilson v. Lund,* 74 Wn.2d 945, 447 P.2d 718 (1968). *Steinbrenner v. J. A. Waterbury Constr. Co., supra.* The contractor's law has a different purpose from the lien law. The purpose of the contractor's registration act is to prevent victimizing of the public by unreliable, fraudulent and incompetent contractors. The lien law protects persons who furnish labor and materials to the exclusion of mortgages not shown of record before the inception of the lien. *Mutual Sav. & Loan*

*Ass'n v. Johnson,* 153 Wash. 41, 279 P. 108 (1929). Interpretations of one statute supply no talisman for interpreting the other. The exemptions provided in the contractor's registration act do not necessarily exclude foreclosure of a mechanics' or materialmen's lien. *Steinbrenner v. J. A. Waterbury Constr. Co., supra.*

In drafting the revised findings of fact and conclusions of law the trial court may find that some items are exempted from the contractor's registration act and some items are within the scope of the act. This could raise a question as to whether the contract is indivisible in nature and Harbor Millwork would be denied access to the courts to foreclose its lien on any of the items furnished. Our answer to this question is that recovery for the exempt items is authorized by the specific terms of RCW 18.27.090, the exemption statute. Plaintiff is entitled to foreclose his lien with reference to such portions of the items that the trial court determines are exempted from the contractor's registration act. *Costello v. Campbell, supra.*

Remanded for the entry of findings of fact and conclusions of law consistent with this opinion.

PETRIE, C.J., and PEARSON, J., concur.