644 P.2d 244

MARSTON'S INC., an Arizona corporation, Appellee, Cross-Appellant,

v.

The ROMAN CATHOLIC CHURCH OF PHOENIX, an Arizona corporation sole and on behalf of their Agency Gerard High School, Appellant, Cross-Appellee.

No. 15339.

Supreme Court of Arizona, In Division.

April 22, 1982.

---

Theodore Matz, Phoenix, for appellee/cross-appellant.

Mahoney & Rood by John W. Rood, Stephen M. R. Rempe, Phoenix, for appellant/cross-appellee.

CAMERON, Justice.

This is an appeal by both parties from a judgment of the trial court sitting without a jury in a case involving the installation by the plaintiff, Marston's Inc., of a floor covering on the Gerard High School gymnasium. Gerard High School is operated by the defendant, Roman Catholic Church of Phoenix. We have jurisdiction of the appeal by transfer from the Court of Appeals pursuant to Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

The parties raise the following issues on appeal:

1. Was it necessary for Marston's to have a contractor's license to install the floor on the Gerard High School gymnasium?

2. Was it proper for the trial court to offset Gerard's damages against the amount it allegedly owed to Marston's under the contract?

3. Is Gerard entitled to recover, in addition, the amount paid on the account?

The facts necessary to a determination of these issues are the following. Plaintiff Marston's was the Arizona representative of Uni-Turf, a synthetic floor covering used in athletic facilities including gymnasiums

and basketball courts. During the fall of 1972, Gerard contracted with Marston's to install Uni-Turf on the Gerard High School gymnasium for a contract price of $16,911.00. The floor was to be completed by the start of the 1972–73 basketball season.

The work in the gymnasium was complicated by a number of factors. The gymnasium was not enclosed. The area had formerly been used for tennis courts and was constructed of abutting slabs of concrete. There was no subsurface "vapor layer" to prevent moisture from forming under the floor. In spite of these disadvantages, the decision was made to proceed with the work of installing the synthetic flooring. Gerard did the initial preparation of the surface. It was completed by Shannon Carpet Interiors, a licensed contractor hired by Marston's to install the floor covering.

Further complications arose due to the delay in starting work. By November, the weather was rainy and cold and Marston's had to rent space heaters to warm and dry the floor prior to installing the surface. Midway through the application, the gymnasium area was used on more than one occasion by a number of people attending events scheduled by Gerard. Attempts to protect the unfinished floor were unsuccessful and dirt and scratches were sealed into the floor. Shortly after the floor was completed, bubbles and other surface irregularities appeared in the floor. Testimony offered at trial blamed the bubbling on failure of the adhesive due to the absence of a vapor layer under the concrete. Ridges crossing the floor were attributed to the expansion and contraction of the concrete slabs under the synthetic floor. Marston's attempted for two years to repair the defects and Gerard made payments to Marston's in the amount of $9,941.32.

Marston's sued Gerard to recover payment for the application of the gymnasium floor. Gerard answered and counterclaimed for some $16,000, alleging that the materials were defective and unsatisfactory and that the work had been performed in an unworkmanlike manner. Marston's claim was dismissed for failure to state a claim upon which relief could be granted because Marston's had failed to allege and prove that it held a contractor's license as it was required to do under A.R.S. § 32–1153. Marston's then filed an amended complaint, alleging that a license was not required and urging contract, quantum meruit, and unjust enrichment as grounds for relief. Gerard defended alleging that plaintiff was an unlicensed contractor and not entitled to sue and asking that it be reimbursed for damages and payments made to plaintiff.

The trial judge made the following findings:

"1) The Defendant suffered damages due to improper installation by the Plaintiff in the amount of Six Thousand Nine Hundred and Eleven Dollars ($6,911.00) as a matter of fact.

2) The Court finds that any damages over and above that are due to the Defendant's conduct as a matter of fact.

3) The Court finds that the Plaintiff is due the Ten Thousand Dollars ($10,000.00) already paid, but is not due any further sums by virtue of the Six Thousand Nine Hundred and Eleven Dollars ($6,911.00), which the Court finds as an offset as a matter of law.

4) The Court finds that the Plaintiff under the set of circumstances that are unique to this case was not required to be licensed to install the product in question as a matter of law.

5) To the above extent, the Court grants and denies judgment to the Plaintiff and Defendant and the Court leaves the parties in the same position as they enter into this lawsuit as a matter of fact and law.

6) The Court determines that each party would bear its own costs."

Both parties appeal.

## WAS A LICENSE REQUIRED OF MARSTON'S IN ORDER TO INSTALL THE FLOOR?

Although Marston's held numerous contracting licenses, it did not have a Class

C–28 license (Composition Floor and Countertop Materials—Plastic Finish Masonite Board) which, it is agreed, would be applicable to the work involved in the instant case. Gerard argues that Marston's case must be dismissed because Marston's has failed to prove that it was a licensed contractor. It relies on A.R.S. § 32–1153 which states:

"No contractor as defined in § 32–1101 shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose."

Marston's contends, however, that a license is not required, relying upon A.R.S. § 32–1121(8) which at the time read:

"This chapter shall not be construed to apply to:

\* \* \* \* \* \*

"8. The sale or installation of finished products, materials or articles of merchandise which are not fabricated into and do not become a permanent fixed part of the structure."

The question of whether products become a "permanent part of the structure" when installed depends on the facts and circumstances of each case. *State ex rel Vivian v. Heritage Shutters, Inc.*, 23 Ariz. App. 544, 534 P.2d 758 (1975); *Craftmaster Restaurant Supply Co., Inc. v. Cavallini*, 11 Wash.App. 500, 523 P.2d 962 (1974); *Harbor Millwork, Inc. v. Achttien*, 6 Wash.App. 808, 496 P.2d 978 (1972).

Uni-Turf comes in large rolls and is attached to the prepared surface of the floor with an epoxy adhesive. Marston's assertion that the synthetic surface could be removed without damaging the concrete floor was uncontroverted. However, the evidence shows that removal would damage the Uni-Turf that was removed. We must determine whether these facts lead to a conclusion that the Uni-Turf was "fabricated into" and becomes a "permanent fixed part of the structure." A.R.S. § 32–1121(8).

Our Court of Appeals has stated:

"[T]he test to be utilized in determining whether the exemption provision of A.R.S. § 32–1121.5 is met is whether damage incidental to the removal of the item in question would prevent its reuse or cause substantial damage to the structure. This is the test adopted in both California and Washington. (citations omitted) We, likewise, adopt this test for the State of Arizona." *State ex rel Vivian v. Heritage Shutters, Inc.*, supra, 23 Ariz.App. at 546, 534 P.2d at 760.

Under the Court of Appeals test, material would be considered fixed and permanent if its removal would either prevent its reuse *or* damage the structure. We believe that damage to the material removed, while a factor to be considered, is not a necessary element in determining whether the material is fixed and permanent. Other courts, construing statutes similar to ours, have focused primarily on the damage to the structure that removal would cause. The New Mexico Supreme Court stated:

"We do not feel that the laying of wall-to-wall carpet accomplishes the same degree of 'improvement' or 'fabrication,' which the work by the electrical contractor or the carpenter in our cases above cited required. While it is true that the carpet is attached to the floor at the edges, *it remains readily removable* and is more of a decorator item than an improvement." *Raby v. Westphall Homes, Inc.*, 76 N.M. 252, 254, 414 P.2d 227, 228 (1966). (emphasis added) See also *Craftmaster Restaurant Supply Co., Inc. v. Cavallini*, supra; *Finley-Gordon Carpet Co. v. Bay Shore Homes, Inc.*, 247 Cal.App.2d 131, 55 Cal.Rptr. 378 (1966).

Other factors considered include the intent of the parties, the damage caused to the material by removal, and whether it is a "decoration" or an "improvement." *Craftmaster Restaurant Supply Co., Inc. v. Ca-*

*vallini, supra; Finley-Gordon Carpet Co. v. Bay Shore Homes, Inc., supra; Raby v. Westphall Homes, supra.* We agree with the Washington Court of Appeals, which stated:

> "In interpreting the requirements of the exemption set forth in RCW 18.27.090(5), it is clear that 'fabricate into' means something other than mere attachment. The supplier who actually installs finished products is required to perform a certain amount of fabrication to make the product operational or functional. Nevertheless, he is exempt from registration as a contractor unless the finished product is actually 'fabricated into' and becomes a 'permanent fixed part of a structure.' There is no easy formula by which it can be determined that something has or has not become 'fabricated into' and a 'permanent "fixed part of a structure.' Accordingly, each case must be decided on its own facts." *Harbor Millwork, Inc. v. Achttien, supra*, 6 Wash. App. at 814–15, 496 P.2d at 982.

In the case at bar, it was undisputed that removal of the Uni-Turf would not damage the concrete floor. The trial judge could reasonably conclude that the Uni-Turf was not "fabricated into" or a "permanent fixed part of the structure" and that a license was not required to install it.

■ There is, however, another reason why Marston's may prevail on this issue and that is its good faith reliance on advice from the Registrar of Contractors and the Arizona Attorney General. Marston's inquired whether a license was required. The Attorney General responded as follows:

> "In accordance with the reasoning employed in Attorney General Opinion No. 58–6 * * *, it is our opinion that the installation of artificial turf under the fact situation detailed hereinabove does not constitute 'contracting', for which a license from the Registrar of Contractors authorizing same is required."

The uncontroverted affidavit of Robert T. Bonnes, secretary-treasurer of Marston's, states:

> "That during the years 1972 and 1973, he and other officers of MARSTON'S, INC., were in communication with the Attorney General's Office and the Registrar of Contractors of the State of Arizona; that officials of both offices informed MARSTON'S, INC., that no license was required for the installation of artificial turf or uniturf, and that no license was available for such activities.

> "That based upon the representations of these State officials, MARSTON'S, INC., believed and still does believe that at the time in question herein no license was required nor was any license even available for the activities involved in this lawsuit."

■ Attorney General opinions are advisory only and are not binding on the court. *State v. Toulouse*, 122 Ariz. 275, 594 P.2d 529 (1979). This does not mean, however, that citizens may not rely in good faith on Attorney General opinions until the courts have spoken. We believe that Marston's had the right to rely on the opinion of the Attorney General until the court spoke. While it is not clear whether the trial court found, as a matter of fact, that the exemption contained in A.R.S. § 32–1121(8) applies or that Marston's should be excused because of reliance upon the opinions of the Attorney General and the Registrar of Contractors, or both, the decision would appear to be supported by reasonable evidence. We have stated:

> " * * * the findings of the trial court as to the weight and effect of the evidence will not be disturbed unless they are clearly erroneous. (citation omitted) When the findings of the trial court are supported by reasonable evidence or based on a reasonable conflict of evidence, they will not be disturbed on appeal. (citation omitted)" *O'Hern v. Bowling*, 109 Ariz. 90, 92–3, 505 P.2d 550, 552–3 (1973).

We find no abuse of discretion in the court's ruling that because of the "unique" set of circumstances in the instant case, Marston's was not required to have a license.

## WAS IT PROPER TO OFFSET DAMAGES AGAINST PAYMENT DUE?

■ The trial court held that Marston's could maintain the action against Gerard, but found that Marston's recovery of the balance due under the contract was offset by the damages Gerard suffered by the unsatisfactory workmanship. The finding that Gerard suffered damages due to improper installation and the amount of damages is supported by the evidence, and we will not disturb the trial court's finding on appeal. O'Hern, supra.

## MAY GERARD RECOVER THE $10,000 IN LIEU OF DAMAGES?

■ Although the trial court found that Gerard was damaged in the amount of $6,911.00, Gerard claims that it is also entitled to recover the additional amount of $9,941.32 ($10,000)[1] already paid to Marston's. We do not agree.

Gerard was partially responsible for the poor condition of the floor. Against the express opposition of Marston's, Gerard insisted upon using the floor before it was completed. As Father Nanko of Gerard testified on cross-examination:

"Q You didn't have any contract for the New Years Eve Party you had there?

"A Sure we did to the extent that people had bought tickets and so forth. We had publicity out.

"Q And the floor still was not done?

"A Right.

"Q And they still told you you were better off not to use it, right?

"A Right.

"Q And you don't doubt, do you, that some of the damage that was done to that floor was done in that gun show and that New Years Eve Party?

"A I don't think we ever doubted that.

"Q And you had four or five thousand people in there for that gun show?

"A Sure. And some of the probably 10,000. But in our estimation still not done any—

"Q So certainly some of the problems on that floor were caused by you; isn't that true?

"A Sure.

"Q And it is also true, isn't it, that you kept pushing these people to get the floor done because you had commitments?

"A Right."

We believe the evidence supports the finding of the trial court that the actions of Gerard contributed to the damage to the floor. O'Hern, supra.

Affirmed.

HOLOHAN, C. J., and FELDMAN, J., concur.

---

1. The trial court, in the judgment, apparently "rounded off" the amount claimed by Gerard from $9,941.32, plus interest and costs, to the amount of $10,000.00.