[No. 30816-9-II.  Division Two.  April 5, 2005.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*, v. WILLIAM DAVISON, *Petitioner*.

*Gregory P. Norbut*, for petitioner.

*Robert M. McKenna, Attorney General*, and *Lisa A. Marsh* and *Shelley M. Mortinson, Assistants*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — William Davison dba Woodpro, Inc. (Woodpro) appeals the superior court's reinstatement of an infraction issued by the Department of Labor and Industries (L&I) for its failure to register as a contractor. The trial court's ruling reversed an earlier

determination by an administrative law judge (ALJ) that Woodpro's cabinet manufacture and installation activities are exempt from contractor registration under former RCW 18.27.090(5) (2001). That statute exempts from registration those who sell or install "finished products, materials, or articles . . . that are not actually fabricated into and do not become a permanent fixed part of a structure." Woodpro contends that substantial evidence supported the ALJ's finding that the cabinets were not permanently secured to the homeowner's walls and that therefore Woodpro was exempt from contractor registration requirements for this job. We agree with Woodpro and reverse.

## FACTS

¶2 In October 2001, the Rowells[1] hired Woodpro[2] to manufacture and install custom cabinets in their kitchen and bathroom. The Rowells provided Woodpro with the measurements for the cabinets and approved Woodpro's written installation proposal.

¶3 Woodpro installed the cabinets by screwing each cabinet into the wall with four screws. Davison testified that Woodpro uses this technique in order to facilitate easy removal of cabinets.[3] In fact, at one point, Woodpro had to remove and reconfigure some of the Rowells' cabinets. But Davison acknowledged that, in contrast with European practice, American homeowners do not typically take cabinets with them when they move. Woodpro installed plywood "sub top" and "self edge" trim on the base cabinets, but the Rowells installed tiles on top of these cabinets. The Woodpro employee who performed the installation esti-

---

[1] The Rowells are not parties to this appeal.

[2] William Davison is the president of Woodpro, Inc. His wife, Judith Davison, acts as the secretary and treasurer.

[3] Davison testified that installation with easy removal in mind is "the standard in the industry," in part because of the frequency of kitchen remodels. Administrative R. (AR) at 74. In addition, Davison opined that a future owner of the Rowells' home would remodel one of the bathrooms because an open area under the sinks was designed for "handicap access." AR at 69.

mated that each cabinet took 10 to 20 minutes to install and that the project took 15 to 20 hours to complete.

¶4 The Rowells testified that they would likely live in the house for the rest of their lives.

¶5 Woodpro completed the job in November 2001. Dissatisfied with Woodpro's work, the Rowells filed a complaint with L&I. L&I investigated, and on January 17, 2002, issued Woodpro an infraction for installing the cabinets when it was not registered as a contractor as required by chapter 18.27 RCW.

¶6 Woodpro appealed the infraction, claiming that it was exempt from the licensing requirement under former RCW 18.27.090(5) because it prefabricated the cabinets and did not permanently affix them to the home. An administrative hearing was held on June 7, 2002. The ALJ determined that the cabinets "were not secured to the wall permanently," Administrative R. (AR) at 101, and reversed the notice of infraction, concluding that Woodpro was acting as a contractor but that the installation of the cabinets fell under the statutory exemption.

¶7 L&I appealed to the Thurston County Superior Court, which reversed the ALJ's decision and reinstated the infraction.

¶8 Woodpro appealed. After Woodpro filed a notice of appeal, it came to this court's attention that under RCW 18.27.310(4), the superior court's decision was subject only to discretionary review under RAP 2.3. We ordered additional briefing from the parties on whether discretionary review was appropriate.

¶9 For the reasons stated below, we grant Woodpro's request for discretionary review and reverse.

## ANALYSIS

### RULES GOVERNING DISCRETIONARY REVIEW

¶10 Woodpro argues that discretionary review is appropriate and we agree.

■ ¶11 RCW 18.27.310(4) provides that "[a]n appeal from the administrative law judge's determination or order shall be to the superior court. *The decision of the superior court is subject only to discretionary review pursuant to Rule 2.3 of the Rules of Appellate Procedure.*" (Emphasis added.) RAP 2.3(b) provides:

> [D]iscretionary review may be accepted only in the following circumstances:
>
> . . . .
>
> (3) The superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative agency, as to call for review by the appellate court.

Woodpro initially argues that, although courts retain ultimate authority to interpret a statute,[4] the trial court's failure to give the requisite deference to the agency's and, in particular, the ALJ's interpretation of an ambiguous statute so far departed from the accepted and usual course of judicial proceedings as to call for our review.[5] But, as L&I correctly notes, an ALJ's construction of the statute does not necessarily indicate the *agency's* interpretation and, therefore, the superior court need not defer to the ALJ's decision. The trial court did not depart from the accepted and usual course of judicial proceedings when it reviewed a single ALJ's interpretation of a statute.

¶12 Nevertheless, review is appropriate here. RAP 2.3(b)(1) permits review where "[t]he superior court has committed an obvious error which would render further proceedings useless."

---

[4] *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325-26, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983).

[5] *See, e.g., City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813-14, 828 P.2d 549 (1992).

■ ¶13 The trial court's Conclusion of Law No. 6 states, "The common laws of fixtures is applicable in this case."[6] Clerk's Papers at 33. But in *Harbor Millwork, Inc. v. Achttien*, 6 Wn. App. 808, 815-16, 496 P.2d 978 (1972), we held that the law of fixtures is inapplicable to circumstances such as those in this case. There, the defendant argued that the plaintiff, a cabinet supplier, should not be able to obtain a lien on the materials it supplied if the court did not consider the plaintiff a contractor under the act. *Harbor Millwork*, 6 Wn. App. at 809. We disagreed:

> As was stated in *Finley-Gordon Carpet Co. v. Bay Shore Homes, Inc.*, 247 Cal. App. 2d 131, 55 Cal. Rptr. 378 (1966), *there is neither compelling reason nor authority to indicate why the law of fixtures should be incorporated into the legislature's design for registering contractors....* The contractor's law has a different purpose from the lien law. The purpose of the contractor's registration act is to prevent victimizing of the public by unreliable, fraudulent and incompetent contractors. The lien law protects persons who furnish labor and materials to the exclusion of mortgages not shown of record before the inception of the lien.... *Interpretations of one statute supply no talisman for interpreting the other.*

*Harbor Millwork*, 6 Wn. App. at 815-16 (emphasis added, citations omitted). Although *Harbor Millwork*'s statement regarding the law of fixtures does not prohibit consideration of fixture law in a contractor registration act context, here the trial court's conclusion that fixture law controlled its decision was error.

■ ¶14 Moreover, the parties agree that there is little guiding authority on contractor registration requirements and both urge us to waive the rules of appellate procedure to "serve the ends of justice." RAP 1.2(c). We liberally interpret the Rules of Appellate Procedure and may alter any of its provisions when necessary to promote justice and

---

[6] Under the common law of fixtures, a chattel becomes a fixture if: (1) it is actually annexed to the realty, (2) its use or purpose is applied to or integrated with the use of the realty it is attached to, and (3) the annexing party intended a permanent addition to the freehold. *Dep't of Revenue v. Boeing Co.*, 85 Wn.2d 663, 667-68, 538 P.2d 505 (1975).

to consider cases and issues on their merits. RAP 1.2(c). We therefore hold that discretionary review is appropriate in this case.

CONTRACTOR REGISTRATION EXEMPTION

¶15 Did the superior court err in reversing the ALJ's reversal of the infraction? We hold that it did.

■ ¶16 In reviewing an administrative action, we sit in the same position as the trial court and apply the Administrative Procedure Act, chapter 34.05 RCW, standards directly to the agency's administrative record. *Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus.*, 112 Wn. App. 291, 296, 49 P.3d 135 (2002) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)), *review denied*, 149 Wn.2d 1003 (2003). Like the trial court, we review questions of law de novo but accord substantial weight to the agency's interpretation of the statutes it administers. *Superior Asphalt*, 112 Wn. App. at 296 (citing *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 823, 748 P.2d 1112 (1988)). We review findings of fact for substantial evidence in light of the whole record. Former RCW 34.05.570(3)(e) (1995). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth or correctness of the matter. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). On mixed questions of law and fact, we independently determine the law, then apply it to the facts as found by the agency. *Hamel v. Employment Sec. Dep't*, 93 Wn. App. 140, 145, 966 P.2d 1282 (1998), *review denied*, 137 Wn.2d 1036 (1999).

■ ■ ¶17 Chapter 18.27 RCW, which requires a contractor to obtain a license to engage in building enterprises, "was designed to prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states." *Harbor Millwork*, 6 Wn. App. at 811. RCW 18.27.010(1) defines a contractor as

any person, firm, or corporation who or which, in the pursuit of an independent business undertakes to, or offers to undertake, or submits a bid to, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish, for another, any building, highway, road, railroad, excavation or other structure, project, development, or improvement attached to real estate or to do any part thereof including the installation of carpeting or other floor covering, the erection of scaffolding or other structures or works in connection therewith or who installs or repairs roofing or siding; or, who, to do similar work upon his or her own property, employs members of more than one trade upon a single job or project or under a single building permit except as otherwise provided herein.

RCW 18.27.010(1). Unless exempted, a contractor must register in order to do business in Washington State. RCW 18.27.200(1)(a). The statutory exemptions to the registration requirement include that asserted by Woodpro, former RCW 18.27.090(5), which provides, "The registration provisions of this chapter do not apply to . . . [t]he sale or installation of any finished products, materials, or articles . . . that are *not actually fabricated into* and *do not become a permanent fixed part of a structure*." (Emphasis added.) *See Harbor Millwork*, 6 Wn. App. at 812-13.

¶18 In *Harbor Millwork*, we addressed whether the company's activities under its contract with a homeowner required registration, thus barring it from suing that homeowner to recover the balance due under the contract. The company had agreed to furnish doors, doorjambs, valances, handrails, and custom-made cabinets for the construction of the defendant Achttien's new home. The company fabricated the items at its plant and delivered them to the construction site. The homeowner and his carpenter-foreman, who were acting as primary contractors for the project, installed the doors, doorjambs, valances, and handrails, and they assisted in installing the kitchen cabinets. But the company's employees installed the remainder of the cabinets. *Harbor Millwork*, 6 Wn. App. at 809.

¶19 We noted that "in the majority of instances the primary means of attaching the cabinets to the walls was by use of screws. . . . [C]abinets were also nailed into place. In other instances, as in the kitchen, the cabinets were bolted into sockets and held in place by lag screws." *Harbor Millwork*, 6 Wn. App. at 814. We also noted that:

> In interpreting the requirements of the exemption set forth in RCW 18.27.090(5), it is clear that "fabricate into" means something other than mere attachment. The supplier who actually installs finished products is required to perform a certain amount of fabrication to make the product operational or functional. Nevertheless, he is exempt from registration as a contractor unless the finished product is actually "fabricated into" and becomes a "permanent fixed part of a structure." There is no easy formula by which it can be determined that something has or has not become "fabricated into" and a "permanent fixed part of a structure."[7] Accordingly, *each case must be decided on its own facts*.

*Harbor Millwork*, 6 Wn. App. at 814-15 (emphasis added). And we concluded under the facts of that case that "[t]here is substantial evidence to support a finding of fact that the items of cabinet work installed by Harbor Millwork would be exempted by [RCW 18.27.090(5)]." *Harbor Millwork*, 6 Wn. App. at 815.[8]

¶20 In a later case, *Craftmaster Restaurant Supply Co. v. Cavallini*, 11 Wn. App. 500, 523 P.2d 962 (1974), Division Three of this court held that there was substantial evidence to support a trial court's finding that certain items were not fabricated into, nor did they become a permanent part of, a restaurant. 11 Wn. App. at 503. But the facts distinguish *Craftmaster* because it involved a leased restaurant facility

---

[7] Both *Harbor Millwork* and *Craftmaster Restaurant Supply Co. v. Cavallini*, 11 Wn. App. 500, 523 P.2d 962 (1974), the only other pertinent case interpreting the RCW 18.27.090(5) exception, do not treat the two terms separately, but essentially examine whether items "[became] permanent" *and* were "fabricated into" a structure. In other words, the cases do not separately analyze the two phrases.

[8] But because there was some dispute and the trial court's findings of fact were inadequate, we remanded to the trial court to determine whether the various items fell under the exemption. *Harbor Millwork*, 6 Wn. App. at 815.

in which the items' ease of removal was especially important. 11 Wn. App. at 503.

¶21 Here, the ALJ found that Woodpro

installed the cabinets . . . in the . . . kitchen and bathrooms . . . according to [its] usual practice by screwing each cabinet, using four screws, into the wall. In doing so, the cabinets were not secured to the wall permanently; they were attached by screws which allowed removal or adjustment of the cabinets.

AR at 101.[9] L&I argues that this finding is not supported by substantial evidence and that insofar as it makes a legal determination, it is incorrect.

¶22 At the administrative hearing, the Woodpro employee who actually installed the cabinets testified that each cabinet took 10 to 20 minutes to install and that it took a total of 15 to 20 hours to complete the project. In addition to screwing the cabinets into place, Woodpro installed the plywood tops of the base cabinets and installed "self edge" trim around the area where the homeowner intended to install the tile countertops. Davison, Woodpro's president, testified that the American (as opposed to European) practice is for cabinets to remain in place even when a homeowner moves. And Mr. Rowell testified that he bought the home to live in and that he and his wife intended to stay there for the rest of their lives. On the other hand, Davison, Woodpro's president, emphasized that bathroom and kitchen remodels were common and that each cabinet would take "two minutes" to remove. AR at 68.

¶23 Each case must be decided on its own facts. *Harbor Millwork*, 6 Wn. App. at 815-16. Although this is a case where reasonable minds may well disagree, our review of the record before the ALJ reveals substantial evidence

---

[9] Moreover, Conclusion of Law No. 4.2 states in pertinent part:

Attachment by screwing the cabinet to the wall was to allow for easy removal and/or adjustment of an installed cabinet rather than fixing the cabinets permanently to the wall. This case is distinguished from a situation where an object is delivered in various parts and is constructed into the structure in such a way that the object becomes permanently attached to the structure.

AR at 103.

supporting the ALJ's finding that these cabinets were not installed permanently and that they were installed with removal and future remodels in mind. And even though the cabinet installation was time consuming, much of this time involved altering the cabinets, not the home. This is consistent with Davison's testimony and the ALJ's finding that the cabinets Woodpro designed were for easy removal. Even though these particular homeowners intended to use these cabinets for their lifetime, substantial evidence supports the ALJ's finding that the cabinets were not installed permanently.

¶24 We reverse the trial court's erroneous application of fixture law and reinstate the ALJ's ruling exempting Woodpro from contractor registration requirements.

HOUGHTON and BRIDGEWATER, JJ., concur.