54 P.3d 1186 (2002)
147 Wash.2d 394
WILLIAMSON, INC., and Masters, Inc., both Washington corporations, Respondents,
v.
CALIBRE HOMES, INC., a Washington corporation, Petitioner.
No. 71493-2.
Supreme Court of Washington, En Banc.
Argued May 14, 2002.
Decided September 19, 2002.
*1187 David Kerruish, Seattle, for Petitioner.
Davidson Czeisler & Kilpatric, Kenneth Davidson, Hively Zeno Drake & Hively, Richard Hively, Kirkland, for Respondents.
JOHNSON, J.
This case requires us to determine whether the substantial compliance doctrine applies to the real estate brokers and salespersons act (REBSA), chapter 18.85 RCW, and whether Williamson, Inc., substantially complied with the licensing requirements of REBSA. Calibre Homes, Inc. (Calibre) argues the substantial compliance doctrine does not apply to REBSA. Calibre further argues that even if the doctrine applies to REBSA, Williamson, Inc., did not have an officer who was also a broker and therefore did not substantially comply with REBSA. The Court of Appeals reversed the trial court and held Williamson, Inc., substantially complied with REBSA. We agree with the Court of Appeals. We hold the substantial compliance doctrine applies to REBSA, and Williamson, Inc., substantially complied with REBSA. The Court of Appeals is affirmed.

FACTS
Calibre is a homebuilder that buys raw land, subdivides it, and builds single family homes on the individual lots. In early 1996, Calibre retained Curtis Williamson (Curtis),[1] at that time a licensed real estate salesperson with Windermere Real Estate, to perform real estate sales services for Calibre. In late 1996, Curtis moved from Windermere Real Estate to Masters, Inc., (Masters), a licensed brokerage under the ReMax franchise name. Calibre continued to retain the services of Curtis. Betsy Williamson (Betsy) joined her husband Curtis in the real estate sales field in 1997. Like Curtis, she "hung" her license at Masters.
Around this time, Curtis and Betsy formed Williamson, Inc. Betsy and Curtis employed the corporate form to address various separate and community property issues that arose after they married. Williamson, Inc., is a closely held corporation; Curtis and Betsy are, and have always been, the sole shareholders, officers and directors of Williamson, Inc. According to the complaint, "Williamson, Inc .... operated as a real estate agent for Masters under certain agreements which entitle Williamson, Inc., to receive payment of all commissioners [sic] earned by Williamson, Inc. on real estate transactions[.]" Clerk's Papers at 130-31 (Complaint ¶ 1.3).
In November, 1997, Calibre designated ReMax/Masters as its exclusive agent for "[l]ots 1-7 in the preliminary plat of Pacific Pointe[,]" effective until November 11, 1998. Clerk's Papers at 138. Masters signed the exclusive agency agreements by the hand of Curtis, who himself signed as "Williamson, Inc. Curtis Williamson-President." Clerk's Papers at 138. On October 6, 1998, the parties extended the exclusive agency agreement for lots two through seven until October 6, 1999. Masters again signed by Curtis, who signed as "Williamson, Inc., by Curtis Williamson Sec./ Treas." Clerk's Papers at 139-44. On December 31, 1998, Calibre unilaterally terminated the services of Betsy and Curtis, Williamson, Inc., and Masters. Within two months of terminating the exclusive agency agreements all six lots comprising the Pacific Pointe development were sold.
Williamson, Inc., and Masters filed suit on July 22, 1999, seeking damages for breach of contract or relief under the doctrines of promissory estoppel and quantum meruit. Calibre moved for summary judgment, arguing Williamson, Inc., was an unlicensed real estate salesperson. On February 17, 2000, the Snohomish County Superior court granted Calibre's motion for summary judgment.
*1188 Williamson, Inc., and Masters appealed. Division One of the Court of Appeals reversed the trial court, holding the doctrine of substantial compliance applied to REBSA, and Williamson, Inc., substantially complied with REBSA. Williamson, Inc. v. Calibre Homes, Inc., 106 Wash.App. 558, 570, 23 P.3d 1118 (2001). Calibre sought, and we granted, review of these two holdings.

ANALYSIS
Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as matter of law. Marquis v. City of Spokane, 130 Wash.2d 97, 105, 922 P.2d 43 (1996). An appellate court reviewing a grant of summary judgment engages in the same inquiry as the trial court; we review questions of law de novo, and view the facts of the case and all reasonable inferences therefrom in a light most favorable to the nonmoving party. Marquis, 130 Wash.2d at 105, 922 P.2d 43.
Calibre retained Masters as its real estate broker. Masters was a real estate broker and held a valid broker's license until April 28, 1999. Curtis and Betsy Williamson are real estate salespersons. Each of them held valid real estate salesperson licenses at all times relevant to this action and fully complied with the licensing requirements of REBSA. They were also employees of Masters, and as such, "hung" their licenses at Masters. In addition to being employees of Masters, Curtis and Betsy were the sole shareholders, officers and directors of Williamson, Inc., a valid Washington corporation. Williamson, Inc., operated through its sole agents, Curtis and Betsy Williamson. Williamson, Inc., was also an employee of Masters. Like Curtis and Betsy, Williamson, Inc., acted as a real estate salesperson; "`[r]eal estate salesperson' or `salesperson' means any natural person employed, either directly or indirectly, by a real estate broker, or any person[[2]] who represents a real estate broker in the performance of any of the acts specified in subsection (1) of this section[.]" RCW 18.85.010(2). Unlike Curtis and Betsy, however, Williamson, Inc., was not a licensed real estate salesperson. It failed to comply with RCW 18.85.120(2):
Any person desiring to be a ... real estate salesperson[ ] must pass an examination as provided in this chapter.... Concurrently, the applicant shall:
(1) Pay an examination fee as prescribed by the director by rule.
(2) If the applicant is a corporation, furnish a certified copy of its articles of incorporation, and a list of its officers and directors and their addresses....
(3) Furnish such other proof as the director may require concerning the honesty, truthfulness, and good reputation, as well as the identity, which may include fingerprints, of any applicants for a license, or of the officers of a corporation. .making the application.
Calibre argues that because Williamson, Inc., was an unlicensed real estate salesperson, RCW 18.85.100 bars it from suing for the allegedly owed commissions:
No suit or action shall be brought for the collection of compensation as a ... real estate salesperson, without alleging and proving that the plaintiff was a duly licensed... real estate salesperson prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service.
Calibre further argues the legislature rejected our application of the substantial compliance doctrine to the contractor registration act, chapter 18.27 RCW, thereby impugning the precedential value of Murphy v. Campbell Investment Co., 79 Wash.2d 417, 486 P.2d 1080 (1971), on which the Court of Appeals relied in its opinion. See Calibre, 106 Wash. App. at 564-65, 23 P.3d 1118. Finally, Calibre argues that even if the substantial compliance doctrine applies to REBSA, Williamson, Inc., did not substantially comply with RCW 18.85.170(1), since neither *1189 Curtis nor Betsy are licensed real estate brokers.
We applied the substantial compliance doctrine to the contractor registration act in Murphy. In that case, two contractors applied for a certificate of registration as specialty contractors. Although they carried public liability and property damage insurance as required by law, they failed to include proof of their insurance in their application. Meanwhile, the two contractors negotiated contracts with Campbell Investment Company (Campbell) for labor, materials and equipment for construction. After signing the contracts and starting work, the two contractors learned the Division of Special Licensing rejected their application for failure to provide proof of insurance. The contractors resubmitted their application with the required proof and received their registration. As the work progressed, their relationship with Campbell turned sour. The two contractors eventually filed notices of lien claims and sued Campbell. The trial court dismissed their suit because they were not registered contractors when they negotiated the contract upon which they sought to sue.
In Murphy, we identified the purpose of the contractor registration act: "`RCW 18.27, et seq., was designed to prevent the victimizing of a defenseless public by unreliable, fraudulent and incompetent contractors, many of whom operated a transient business from the relative safety of neighboring states.'" Murphy, 79 Wash.2d at 421, 486 P.2d 1080 (quoting Stewart v. Hammond, 78 Wash.2d 216, 219, 471 P.2d 90 (1970)). We then examined the contractor registration act to identify the "crucial devices" the legislature utilized to effect the purpose of the act. We held those "crucial devices" were the contractor's surety bond and public liability and property damage insurance. Murphy, 79 Wash.2d at 421, 486 P.2d 1080. We further held the registration requirement was designed simply to aid the public in identifying contractors with the minimum qualifications prescribed by the legislature. Murphy, 79 Wash.2d at 422, 486 P.2d 1080.
Despite Calibre's argument to the contrary, the legislature did not reject our application of the substantial compliance doctrine to the contractor registration act. In fact, a careful reading of the contractor registration act shows the legislature acknowledged the substantial compliance doctrine does apply to the contractor registration act. See RCW 18.27.080 ("In determining under this section whether a contractor is in substantial compliance with the registration requirements of this chapter, the court shall take into consideration the length of time during which the contractor did not hold a valid certificate of registration."). Calibre relies on RCW 18.27.005 to support its position: "This chapter shall be strictly enforced. Therefore, the doctrine of substantial compliance shall not be used by the department in the application and construction of this chapter." But "`Department' means the department of labor and industries," RCW 18.27.010(5), it does not mean the courts.
Furthermore, "it is well recognized that the underlying purpose inherent in the function of judicial interpretation of statutory enactments is to effectuate the objective often referred to as the intentof the legislature." Murphy, 79 Wash.2d at 420, 486 P.2d 1080 (emphasis omitted). The substantial compliance doctrine is rooted in the judiciary's longstanding effort to give legislative commands a rational interpretation founded upon their design. See Murphy, 79 Wash.2d at 421, 486 P.2d 1080. The legislature did not forbid courts from employing the substantial compliance doctrine, and the facts of this case do not offer a compelling reason to abandon the doctrine.
Lower courts have already identified the purpose of REBSA:
[T]he primary purpose underlying the Act [is] to promote a minimum standard of conduct for those engaged in the business of real estate who are often conducting their business in the capacity of a fiduciary. In short, the purpose of the ... Act is to protect the general public from negligent, unscrupulous, or dishonest real estate operators.
Nuttall v. Dowell, 31 Wash.App. 98, 108, 639 P.2d 832 (1982).
*1190 Other lower court opinions have recognized, "[t]he purpose of the [A]ct is to protect the public from fraud and misrepresentation." Springer v. Rosauer, 31 Wash.App. 418, 421, 641 P.2d 1216 (1982); see also Schmitt v. Coad, 24 Wash.App. 661, 665, 604 P.2d 507 (1979) ("Real estate-business opportunity brokers statutes are designed to protect the public from fraud and misrepresentation by dishonest persons."). To effect this purpose, the legislature requires all real estate salespersons to pass a written examination and complete a 60 hour course in real estate fundamentals. RCW 18.85.095. These are the "crucial devices" utilized by the legislature to effect the purpose of the act.
Both Curtis and Betsy, the sole officers of Williamson, Inc., passed the written exam required by RCW 18.85.130. Additionally, both Curtis and Betsy successfully completed the education required by RCW 18.85.095(1)(b). At all times relevant to this case, they were both fully licensed real estate salespersons. They fully complied with the "crucial devices" of chapter 18.85 RCW. Acting as agents for Williamson, Inc., Curtis and Betsy performed all of the real estate sales services at issue in this case. Thus, we conclude Williamson, Inc., complied with the "crucial devices" of chapter 18.85 RCW. The public, including Calibre, received all the protection afforded by chapter 18.85 RCW. Williamson, Inc., simply failed to "furnish a certified copy of its articles of incorporation, and a list of its officers and directors and their addresses." RCW 18.85.120(2). Similar to the registration requirement in Murphy, this requirement appears designed simply to aid the public in identifying corporate real estate salespersons with the minimum qualifications prescribed by the legislature.
This case presents a classic example of why the substantial compliance doctrine exists. Williamson, Inc., complied with every substantive statutory requirement imposed on corporations seeking a real estate salesperson license. Calibre seeks to avoid addressing the breach of contract claim on the grounds Williamson, Inc., did not actually comply with chapter 18.85 RCW. It does not, and cannot, argue it was prejudiced by the actions of Williamson, Inc., nor does Calibre suggest it would have benefited if Williamson, Inc., had furnished a copy of its articles of incorporation to the director. In fact, it would have gained nothing, since that requirement is not a "crucial device" utilized to effect the purpose of the Act. Calibre does not allege, nor does the record suggest, that Curtis and Betsy employed the corporate form in a fraudulent or misleading manner.
Calibre argues that applying the substantial compliance doctrine to chapter 18.85 RCW would implicitly overrule Kennedy v. Rode, 41 Wash.App. 177, 702 P.2d 1240 (1985). In Kennedy, a licensed real estate broker agreed to pay a part of his commission to an unlicensed person, in violation of RCW 18.85.330: "[I]t shall be unlawful for any licensed broker to pay any part of his commission or other compensation to any person who is not a licensed real estate broker...." Kennedy, the licensed broker, sued a variety of parties alleging tortious interference with a contractual expectancy. The Kennedy court held that since sharing commissions with an unlicensed person was illegal, "Kennedy's commission agreement violate[d] public policy, and any claim arising out of it [was] ... unenforceable." Kennedy, 41 Wash.App. at 182, 702 P.2d 1240.
This case is factually distinguishable. The unlicensed person in Kennedy was a natural person, not a closely held corporation owned and represented entirely by licensed natural persons. Furthermore, there was no showing in Kennedy that the unlicensed person even remotely complied with a single requirement in chapter 18.85 RCW. Additionally, because the express terms of the agreement upon which Kennedy sued provided for the illegal commission sharing, the contract was facially invalid. Unlike the agreement in Kennedy, the agreements here are facially valid. Finally, the court in Kennedy did not consider the substantial compliance doctrine at all. We cannot read Kennedy to stand for a proposition it did not analyze or address. See Kucera v. Dep't of Trans., 140 Wash.2d 200, 220, 995 P.2d 63 (2000) (noting courts "`do not rely on cases that fail to specifically raise or decide an issue.'" (quoting In re Electric Lightwave, Inc., 123 *1191 Wash.2d 530, 541, 869 P.2d 1045 (1994))). We hold the substantial compliance doctrine applies to REBSA.[3]
Calibre next argues that even if the substantial compliance doctrine does apply to REBSA, Williamson, Inc., did not substantially comply with REBSA. Calibre relies on RCW 18.85.170(1):
No license issued under the provisions of this chapter shall authorize any person other than the person to whom it is issued to do any act by virtue thereof nor to operate in any other manner than under his or her own name except:
(1) When a license is issued to a corporation it shall entitle one officer thereof, to be named by the corporation in its application, who shall qualify the same as any other broker, to act as a real estate broker on behalf of said corporation, without the payment of additional fees[.]
Calibre reads subsection (1) as a requirement: "[E]very corporation that provides real estate services must, in addition to the requirements of RCW 18.85.120(2), also have at least one officer of the corporation who is a licensed broker...." Petition for Review at 15. But the plain text of RCW 18.85.170(1) refutes Calibre's argument. This subsection creates an entitlement; it does not impose a requirement. It allows a qualified real estate broker who is also an officer of a corporation licensed under chapter 18.85 RCW to act as a broker without paying additional fees. It does not require a qualified real estate broker who is also an officer of a corporation licensed under chapter 18.85 RCW to act as a broker without paying additional fees. Calibre's argument on this point fails.

CONCLUSION
The substantial compliance doctrine applies to REBSA, corporate salespersons need not have a broker as an officer of the corporation, and Williamson, Inc., substantially complied with REBSA. The Court of Appeals is affirmed, and this case is remanded for further proceedings.
JOHNSON, SMITH, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.
MADSEN, J. (dissenting).
The majority improvidently expands the bounds of the substantial compliance doctrine to reach the conclusion that Williamson, Inc., can maintain a suit against Calibre Homes, Inc. (Calibre). Since Williamson, Inc., is not a licensed salesperson, it is barred from suing for commissions on any ground. Because the majority deals a serious blow to the doctrine of substantial compliance, I respectfully dissent.
In order to conclude that Williamson, Inc., substantially complied with the provisions of chapter 18.85 RCW, the majority focuses on the action of Curtis and Betsy Williamson. Majority at 10. The majority's underlying premise is that the fact that Curtis and Betsy Williamson complied with the licensing statutes and became licensed salespersons demonstrates substantial compliance by Williamson Inc., with those same statutes. This premise is flawed, however, because chapter 18.85 RCW treats corporations as brokers and salespeople and establishes requirements that corporations must independently meet in order to become licensed brokers or salespersons. By any recognized measure, Williamson, Inc., did not substantially comply with the requirements of RCW 18.85.120 because it took none of the steps required to become licensed.
Substantial compliance "has been defined as actual compliance in respect to the *1192 substance essential to every reasonable objective of [a] statute." In re Habeas Corpus of Santore, 28 Wash.App. 319, 327, 623 P.2d 702 (1981) (citing Stasher v. Harger-Haldeman, 58 Cal.2d 23, 29, 372 P.2d 649, 22 Cal.Rptr. 657 (1962)). "In the cases where substantial compliance has been found, there has been actual compliance with the statute, albeit procedurally faulty." City of Seattle v. Pub. Employment Relations Comm'n, 116 Wash.2d 923, 928, 809 P.2d 1377 (1991). RCW 18.85.120 establishes the procedure for becoming a licensed real estate broker or salesperson. Domestic corporations applying for a license must "[f]urnish a certified copy of its articles of incorporation, and a list of its officers and directors and their addresses." RCW 18.85.120(2). Additionally, a corporation must "furnish such other proof as the director may require concerning the honesty, truthfulness, and good reputation, as well as the identity, which may include fingerprints... of the officers of a corporation ... making the application." RCW 18.85.120(3). Williamson, Inc., did not even attempt to meet these requirements, so its efforts cannot be deemed "procedurally faulty."
To justify its conclusion to the contrary, the majority relies on Murphy v. Campbell Investment Company, 79 Wash.2d 417, 421-22, 486 P.2d 1080 (1971), for the proposition that substantial compliance is accomplished if the "the `crucial devices' the legislature utilized to effect the purpose of the act" are satisfied. Majority at 1189. As the majority explains, in Murphy, the court determined that a registration requirement for contractors, which the plaintiffs attempted to meet, was "designed simply to aid the public in identifying contractors with the minimum qualifications prescribed by the legislature" and is not a "crucial device." Majority at 1189, 1190. The majority holds that the requirements of RCW 18.85.120 are similar to the Murphy registration requirement and are therefore not crucial devices.
Murphy does not support the majority for two critical reasons. First, the majority mischaracterizes the requirements of RCW 18.85.120. The requirement that a corporation apply for a license is not simply a device for public identification. The purpose of Title 18 RCW is to "protect the general public from negligent, unscrupulous, or dishonest real estate operators." Nuttall v. Dowell, 31 Wash.App. 98, 108, 639 P.2d 832 (1982) (citing State v. Waymire, 26 Wash.App. 669, 614 P.2d 214 (1980)). Title 18 RCW grants power to the director of licensing to take disciplinary action. See RCW 18.85.230. An unlicensed corporate broker or salesperson is not easily supervised by the director since he or she will not have the names and addresses of the unlicensed company's board of directors or a copy of its articles of incorporation. It would require investigation just to know of the company's existence.
Moreover, the director would have no direct mechanism to require evidence concerning the honesty of board members as provided by RCW 18.85.120. Under the majority's view, companies could avoid the hassle of compliance by hiring only licensed salespeople and thereby "substantially comply" with the law. This could leave consumers in the hands of unscrupulous companies and boards. The power to take disciplinary action, and hence protect the public, will be seriously eroded under the majority's opinion.
In addition, RCW 18.85.120 requires that a fee be paid to obtain a license, and under RCW 18.85.220 that money is placed in the "real estate commission account in the state treasury." Under the majority's decision, the Legislature's clear intent to fund the commission with licensing fees would be thwarted by companies that avoid paying those fees while "substantially complying" with the law.
The second distinction between this case and Murphy is that the plaintiffs in Murphy attempted to meet the registration requirement. There, two contractors applied for a certificate of registration as specialty contractors. Murphy, 79 Wash.2d at 418, 486 P.2d 1080. The court in Murphy noted that "[b]ut for a technical defect in the appellants' original application for registration, the appellants would have possessed the requisite registration prior to the date upon which the parties entered into their written agreement." Id. at 422, 486 P.2d 1080. In contrast, Williamson, Inc., made no attempt to register. This is not a case where a technical *1193 defect in an application prevented compliance.
There is another case from the Court of Appeals, however, that is directly on point, Kennedy v. Rode, 41 Wash.App. 177, 702 P.2d 1240 (1985). In Kennedy, the Court of Appeals affirmed the trial court's order of summary judgment dismissing the plaintiff's claim for tortious interference with business relations. Id. at 178, 702 P.2d 1240. The plaintiff, a real estate broker, was contacted to help complete a business transaction involving an interest in land. Id. He was contacted by James England, an associate of one of the parties to the transaction who was not a licensed real estate broker or salesman. Id. The plaintiff and England were to share a $50,000 commission with the plaintiff receiving $45,000 and England receiving $5,000. Id. at 178, 702 P.2d 1240. The Court of Appeals determined that the transaction fell under the purview of former RCW 18.85.330, Laws of 1953, ch. 235, § 15,[1] making it unlawful for a licensed broker to share commissions with unlicensed brokers and for real estate salespersons who are not licensed to share with the licensed broker. Kennedy, 41 Wash.App. at 180-81, 702 P.2d 1240. This led the court to conclude that the plaintiff's agreement violated public policy, and thus any claim arising out of the agreement was tainted by the illegality and unenforceable. Id. at 182, 702 P.2d 1240 (citing Sherwood & Roberts-Yakima, Inc. v. Leach, 67 Wash.2d 630, 636-37, 409 P.2d 160 (1965)).
Although the majority purports to distinguish this case from Kennedy, it actually overrules that decision sub silentio. The majority's first distinction, that "[t]he unlicensed person in Kennedy was a natural person, not a closely held corporation owned and represented entirely by licensed natural persons," is immaterial since chapter 18.85 RCW includes corporations as brokers or salespersons. Majority at 1190. RCW 18.85.100 specifically requires every person, natural or corporate, to be licensed in order to perform real estate services. Next, the majority claims that Kennedy is distinguishable on the basis that the unlicensed person did not "even remotely" comply with a single requirement in chapter 18.85 RCW. Id. That is incorrect. The majority can only draw this distinction by attributing the actions of Curtis and Betsy Williamson to Williamson, Inc. Like the unlicensed person in Kennedy, Williamson, Inc., however, made no attempt whatsoever to comply with the provisions of chapter 18.85 RCW, and the fact that Curtis and Betsy complied with licensing requirements cannot alter the fact that Williamson, Inc., did not. Finally, the majority's contention that Kennedy is distinguishable because the agreements here are facially valid is also incorrect. The contract in Kennedy was invalid because it provided for commission sharing between a licensed agent and an unlicensed person. The contract here is invalid for similar reasons. Moreover, Kennedy does not focus on the contract itself but on the fact that it violates public policy to make agreements that involve the sharing of commissions with unlicensed individuals or to have unlicensed individuals acting as agents in real estate transactions. Kennedy, 41 Wash.App. at 181, 702 P.2d 1240. It is this identical principle that is applicable in the case at bar.
Since Williamson, Inc., failed to comply in any respect with the licensing requirement of RCW 18.85.120, Williamson, Inc., is not entitled to sue Calibre for commissions. RCW 18.85.100 states:
It shall be unlawful for any person to act as a real estate broker, associate real estate broker, or real estate salesperson without first obtaining a license therefor, and otherwise complying with the provisions of this chapter.
No suit or action shall be brought for the collection of compensation as a real estate broker, associate real estate broker, or real estate salesperson, without alleging and proving that the plaintiff was a duly licensed real estate broker, associate real estate broker, or real estate salesperson prior to the time of offering to perform any such act or service or procuring any *1194 promise or contract for the payment of compensation for any such contemplated act or service.
While Betsy and Curtis are licensed, the plaintiff, Williamson, Inc., was never a "duly licensed" real estate salesperson.
The trial court granted summary judgment to Calibre on the basis that Masters, Inc., and Williamson, Inc., were barred from suing under RCW 18.85.330 since Williamson, Inc., had not complied with statutory licensing requirements. The judgment of the trial court should be affirmed.
MADSEN, J., ALEXANDER C.J., and SANDERS J., concur.
NOTES
[1] To avoid confusion between the Williamsons and Williamson, Inc., we have elected to refer to the Williamsons by their individual first names.
[2] "The word `person' as used in this chapter shall be construed to mean and include a corporation, limited liability company, limited liability partnership, or partnership, except where otherwise restricted[.]" RCW 18.85.010(4).
[3] The substantial compliance doctrine does not apply only to the Contractor Registration Act or REBSA. See, e.g. Black v. Dep't of Labor & Indus., 131 Wash.2d 547, 552, 933 P.2d 1025 (1997) (applying substantial compliance doctrine to invocation of appellate jurisdiction); Dep't of Ecology v. Adsit, 103 Wash.2d 698, 694 P.2d 1065 (1985) (applying substantial compliance doctrine to Water Rights Act); Barr v. Interbay Citizens Bank of Tampa, 96 Wash.2d 692, 635 P.2d 441, 649 P.2d 827 (1981) (applying substantial compliance doctrine to personal service statute); Davies v. Krueger, 36 Wash.2d 649, 219 P.2d 969 (1950) (applying substantial compliance doctrine to special election notification requirements); Merseal v. Dep't of Licensing, 99 Wash. App. 414, 994 P.2d 262 (2000) (applying substantial compliance doctrine to implied consent statute when defendant stipulated to accuracy of police report).
[1] Amendments to RCW 18.85.330 since Kennedy was decided are not material to this discussion of Kennedy or the present case.