## NEW ENGLAND RETAIL PROPERTIES, INC.

v.

## COMMERCE PARK ASSOCIATES 11, LLC.

### No. 2002–479–Appeal.

Supreme Court of Rhode Island.

June 18, 2003.

---

George E. Lieberman, Esq., Providence, for Plaintiff.

Leonard Accardo, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

A statute, G.L.1956 § 5–20.5–21, prevents any person from maintaining a lawsuit to recover a commission, fee, or other compensation for any act that only licensed real-estate brokers can perform—unless that person was a duly licensed broker when he, she, or it performed the act in question. A Superior Court justice relied upon this statute to grant summary judgment in favor of the defendant, property owner Commerce Park Associates 11, LLC (Commerce Park), against the plaintiff, real-estate agent New England Retail Properties, Inc. (New England).

When it began this lawsuit, New England was a real estate agency with its principal place of business in Wethersfield, Connecticut. In March 2000, it entered into a listing agreement with Commerce Park in which New England agreed to act as Commerce Park's non-exclusive agent to obtain a lease for a parcel of land that Commerce Park owned in West Greenwich. If New England's efforts to procure a lessee proved successful, Commerce Park agreed to pay New England a commission of $62,000, to be paid in three equal installments after it leased the property. New England successfully secured a lessee for the property and Commerce Park signed a lease agreement in November 2000 with lessee C & L Diners, LLC. Commerce Park paid the first installment due on the commission, but it failed to pay the second installment when it was due. New England then sued Commerce Park in Superior Court for the amount due on the second installment; it also requested a declaratory judgment that Commerce Park would be obligated to pay the third installment. In addition, New England's complaint included claims for unjust enrichment and *quantum meruit.*

In due course, Commerce Park moved to dismiss the complaint. It argued that New England was not entitled to a commission because it was not a licensed real estate broker in this state and, therefore, it was not authorized to transact business here or to maintain a lawsuit to recover a commission. The motion justice treated the motion to dismiss as a motion for summary judgment, and granted the motion.

■ It is undisputed that, although it was duly licensed in its home state of Connecticut, New England did not possess a real estate broker's license in Rhode Island when it procured the lessee for Commerce Park's land. Commerce Park based its motion to dismiss on § 5–20.5–21, which provides:

"Except as provided, no person shall maintain an action in any court of this state for the recovery of a commission, fee, or compensation for any act done, the doing of which is prohibited under

this chapter to other than licensed brokers, unless that person was licensed under this chapter as a broker at the time of the doing of the act."

The motion justice compared the above statute with the registration requirements for contractors, found in G.L.1956 § 5–65–4. That section prevents an unlicensed contractor from filing a lien or claim for the performance of work unless the contractor was registered under that chapter. Section 5–65–4(2)(b) provides the following exception from this requirement:

"A court may choose not to apply this section if the court finds that to do so would result in a substantial injustice to the unregistered contractor."

The motion justice concluded that the absence of a similar savings clause in the real estate broker's statute was evidence of a legislative intent for the courts to strictly enforce the licensing requirements of that provision.

A single justice of this Court ordered the parties to show cause why we should not resolve this appeal summarily. Because they have not done so, we proceed to decide the appeal at this time.

On appeal, New England asserts that the motion justice erred by concluding in part that the broker's statute stripped the court of its discretionary power to do equity. To support this argument, it cites to a federal case, *In re Atlantic Pipe Corp.*, 304 F.3d 135, 147–48 (1st Cir.2002), in which the First Circuit Court of Appeals held that a federal trial judge possessed discretion to order the parties to a lawsuit to participate in mandatory, nonbinding mediation, despite the absence of any statutory authority empowering the court to do so. That case, however, did not involve a question of statutory interpretation such as the one that faces us here.

Specifically, the issue here is whether the General Assembly intended that a statute requiring persons to be licensed when they perform certain real-estate services—or else forfeit their right to sue to recover any compensation when they are not paid for such services—should be enforced according to its terms. Or, to put the question differently, did the General Assembly intend for the courts to retain some discretion to prevent unjust enrichment when an unlicensed entity has rendered certain real-estate services that only licensed brokers can perform—services that have conferred a benefit on a client—who nevertheless fails to pay for them? Thus, the reasoning in the *Atlantic Pipe* decision does not apply to this type of case because it addresses a completely different issue.

New England next argues that, because it employed the individual brokers who worked on this transaction and because these brokers were licensed in Rhode Island, it fulfilled the purpose of the licensing statute. According to New England, its vice president, Matthew Halprin, served as its principal broker. Apparently, he has been duly licensed in Rhode Island as an individual real-estate broker since 1997.[1] New England also contends that another one of its employees, Kathryn D'Addabbo, worked under the supervision of Mr. Halprin in executing the agreement with Commerce Park on behalf of New England, and that she also was a licensed real-estate broker in Rhode Island when New England provided the services in question. Thus, New England argues, the mere fact that the corporation in this case was unlicensed did not subvert the purposes of the statute. It thus posits that

1. General Laws 1956 § 5–20.5–8 provides that the broker's license issued to a corporation must designate the name of the one principal active officer of the corporation for whom the license is valid.

strict compliance with the licensing statute would lead to an unfair result in this case.[2]

In any event, Commerce Park disputes New England's assertion that Mr. Halprin was its principal broker. It also contends that strict construction of the statute is necessary to carry out the express purpose of the law, which is to prevent unlicensed brokers—be they corporations or individuals—from providing real-estate services without a license in this state and then suing to obtain payment for same.

It is true that some courts in other jurisdictions have applied the so-called substantial-compliance doctrine in cases involving real-estate brokers and licensing statutes. *See, e.g., Williamson, Inc. v. Calibre Homes, Inc.,* 147 Wash.2d 394, 54 P.3d 1186, 1190 (2002). But others enforce their real-estate-broker licensing statutes according to the letter of the law. Thus, for example, in Texas, the substantial-compliance doctrine was held not to apply to that state's real-estate-licensing scheme. *See Coastal Plains Development Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 288–89 (Tex. 1978). In that case, the court held that the respondent, Micrea, Inc., a promoter and seller of lots, was not entitled to recover a real-estate commission because it was not licensed pursuant to the applicable statute. Although Micrea's president was properly licensed, the court held, substantial compliance "will not suffice" in order for an unlicensed corporate entity to collect a real-estate commission. *Id.* at 289; *see also Northside Realty Associates, Inc. v. MPI Corp.,* 245 Ga. 321, 265 S.E.2d 11, 12 (1980) (although president of unlicensed plaintiff corporation was a licensed broker, corporation not allowed to recover its commission); *Philip Mehler Realty, Inc. v. Kayser,* 176 A.D.2d 104, 574 N.Y.S.2d 1, 2 (N.Y.App.Div.1991); *NFS Services, Inc. v. West 73rd Street Associates,* 102 A.D.2d 388, 477 N.Y.S.2d 135, 138 (N.Y.App.Div. 1984), *aff'd,* 64 N.Y.2d 919, 488 N.Y.S.2d 648, 477 N.E.2d 1102 (1985); *Conrad v. Artha Garza Co.,* 615 S.W.2d 238, 240–41 (Tex.Civ.App.1981) (unlicensed plaintiff corporation not allowed to recover commission, despite fact that individual salesperson was licensed broker).

■ Recently, in *Bourque v. Stop & Shop Companies, Inc.,* 814 A.2d 320 (R.I. 2003), we again observed that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings."

---

**2.** New England also relies on the case of *Williamson, Inc. v. Calibre Homes, Inc.,* 147 Wash.2d 394, 54 P.3d 1186, 1190 (2002), for the proposition that the doctrine of substantial compliance should apply to this situation. Even though New England, the corporate plaintiff and the contracting party with Commerce Park, did not possess a Rhode Island broker's license, it substantially complied with the licensing statute, New England suggests, because the individual brokers who worked on this transaction in their capacities as New England agents were themselves licensed. But *Williamson* is distinguishable from this case because the only two fully licensed real-estate brokers in that case also were the only officers of the corporation. *Id.* In this case, New England does not assert that its sole officers also were the corpora-

tion's only real-estate brokers. And it concedes that § 5–20.5–21's use of the word "person" applies to corporations such as New England as well as to individuals. Thus, the licensing statute clearly requires that corporate entities such as New England which can act only through their individual agents and employees, also must be licensed for the corporation to maintain a lawsuit to collect an unpaid commission. Moreover, no licensed agent or employee of New England was a plaintiff in this case. Thus, we are not faced with a situation in which an unlicensed corporation has assigned its rights under the listing agreement to a licensed real-estate broker who actually performed the services in question and who then sues to recover the commission.

*Id.* at 323–24 (quoting *Pezzuco Construction, Inc. v. Melrose Associates, L.P.*, 764 A.2d 174, 178 (R.I.2001)). The language of § 5–20.5–21 is clear and unambiguous. Thus, we cannot fault the Superior Court for enforcing the statute as it is written, despite the arguably harsh results in this case. "Even hardship does not justify a court in reading into a statute something contrary to its unequivocal language." *Kastal v. Hickory House, Inc.*, 95 R.I. 366, 369, 187 A.2d 262, 264–65 (1963).

> "Only when the [L]egislature sounds an uncertain trumpet may the [C]ourt move in to clarify the call. But when the call is clear and certain as it is here we may not consider whether the statute as written comports with our ideas of justice, expediency or sound public policy. In such circumstances that is not the [C]ourt's business." *Id.*

The call of the Legislature's trumpet in this particular legal arena is loud and clear: no license, no suit to collect a commission. To carve out, as New England urges, an equitable exception for so-called substantial-compliance situations—and allow suits to recover a commission based on unjust-enrichment or *quantum-meruit* theories—would thwart the legislative purpose in enacting the statute because it would enable unlicensed corporations that provide real-estate services that can be provided only by licensed brokers to maintain lawsuits to recover unpaid real-estate commissions. If we were to recognize such an exception to the law, then, as long as an out-of-state real-estate firm employed on any Rhode Island transaction an individual who was licensed in Rhode Island as a broker, it could successfully evade the statutory requirement that all persons who provide real-estate services in this state that can be provided only by licensed brokers—including out-of-state corporate entities such as New England— must possess a license in this jurisdiction to do so when they provide such services before they will be allowed to maintain a lawsuit to recover a commission. Thus, such an interpretation of the statute would open up a loophole big enough for a commercial moving van to drive through it. Respectfully, we decline to accept this invitation.

For these reasons, we deny and dismiss the plaintiff's appeal and affirm the judgment.

Justice FLAHERTY did not participate.