[No. 54455-1-I. Division One. May 31, 2005.]

ARCTIC STONE, LTD., *Appellant*, v. ANTHONY DADVAR ET AL., *Respondents*.

790

*John R. Guardi*, for appellant.
*James R. Hawes*, for respondents.

¶1 AGID, J. — Anthony Dadvar hired Arctic Stone, Ltd., to provide cut granite and limestone for a home construction project. Arctic Stone sued Dadvar for breach of contract and unjust enrichment after Dadvar refused to pay the remaining balance owed. Dadvar moved for summary judgment, arguing that Arctic Stone could not sue him because it was not registered as required by Washington's contractor registration act (CRA), chapter 18.27 RCW. The trial court granted Dadvar's motion, and Arctic Stone appealed.

¶2 Arctic Stone argues that genuine issues of material fact remain about whether it qualified for two of the CRA's exemptions, and that even if it was not exempt, it substantially complied with the CRA. Because it did not rebut Dadvar's showing that the stone was fabricated into and became a permanent part of the structure, Arctic Stone is not exempt under RCW 18.27.090(5). But it did show that a registered contractor installed at least some of the stone. RCW 18.27.090(8) exempts contractors who furnish only materials, so we conclude Arctic Stone is exempt from the registration requirement for all the stone it furnished and the registered contractor installed. Finally, Arctic Stone did

not substantially comply with the CRA because, as the contractor seeking recovery, it must have been covered by both a surety bond and liability insurance. We affirm in part and reverse in part, and remand for a determination of how much of the stone Arctic Stone furnished and the registered contractor installed.

## FACTS

¶3 In October 2002, Anthony Dadvar hired Arctic Stone, Ltd., to provide cut granite and limestone for various components of a Kirkland home Dadvar was building. Arctic Stone is located in Richmond, British Columbia, and is not registered as a contractor in Washington. The contract provided in part

> This contract is to confirm Anthony Dadvar has contracted Arctic Stone Ltd to fabricate granite countertops, vanity tops and fireplaces for 10433 N.E. 43rd Avenue, Kirkland, WA.
>
> The contract total amount is $53[,]466.33 in CAD [Canadian dollar] (GST [Goods and Services Tax] Exempt). This price includes all materials, labour, transport, taxes and installation. Arctic Stone will add and/or deduct the final measurements and will be reflected upon the final invoice.

¶4 Arctic Stone hired a registered contractor to install the stone, but the parties dispute how much installation that contractor actually did. There were problems with the stone work throughout late 2002 and early 2003. Dadvar made one payment and then refused to pay the balance of over $40,000, alleging that the work was defective. In August 2003, Arctic Stone filed a complaint against Dadvar for breach of contract and unjust enrichment. Dadvar moved for summary judgment, arguing that Washington's CRA, RCW 18.27.005-.900, prohibited Arctic Stone from suing him because Arctic Stone was not a registered contractor. Arctic Stone made the same arguments it raises on appeal, but the Superior Court rejected them and granted Dadvar's motion for summary judgment.

## DISCUSSION

■ ¶5 We review summary judgments de novo, making the same inquiry as the trial court.[1] Summary judgment is proper only when there is no genuine issue about any material fact, and the moving party is entitled to a judgment as a matter of law.[2] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[3] But the nonmoving party

> may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value; for after the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists.[4]

Questions of fact may be determined as a matter of law when reasonable minds can reach only one conclusion.[5]

¶6 The CRA requires contractors to register with the Department of Labor and Industries.[6] As an incentive to register, the CRA mandates that

---

[1] *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

[2] CR 56(c).

[3] *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[4] *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

[5] *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985) (citing *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975); *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963)).

[6] A "contractor" is

> any person, firm or corporation who or which, in the pursuit of an independent business undertakes to, or offers to undertake, or submits a bid to, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish, for another, any building, highway, road, railroad, excavation or other structure, project, development, or improvement attached to real estate or to do any part thereof . . . .

RCW 18.27.010(1). In its opening brief, Arctic Stone assigns error to the trial court's finding that the contract was an agreement to engage in construction work. But it makes no substantive argument to support this claim, and its reply brief specifically states that the only two issues for review are whether Arctic Stone is exempt from the CRA's registration requirements and whether it substantially complied with the statute. We do not address assignments of error unsupported by

[n]o person engaged in the business or acting in the capacity of a contractor may bring or maintain any action in any court of this state for the collection of compensation for the performance of any work or for breach of any contract for which registration is required under this chapter without alleging and proving that he was a duly registered contractor and held a current and valid certificate of registration at the time he contracted for the performance of such work or entered into such contract. . . .[7]

The parties agree that Arctic Stone was not registered under the CRA. However, the CRA provides exemptions which excuse registration under certain circumstances, and Arctic Stone argues that it falls under two of these exemptions.

## I. *RCW 18.27.090(5)*

¶7 Under RCW 18.27.090(5), registration is not required for the "sale or installation of any finished products, materials, or articles of merchandise that are not actually fabricated into and do not become a permanent fixed part of a structure . . . ." Whether or not a contractor is exempt under RCW 18.27.090(5) is a question of fact.[8] Arctic Stone argues that the trial court erred in granting summary judgment because there is a genuine issue of material fact about whether the cut stone was "fabricated into" and became a "permanent fixed part" of Dadvar's home.

---

argument or citation to authority. *Ottgen v. Clover Park Technical Coll.*, 84 Wn. App. 214, 218 n.2, 928 P.2d 1119 (1996) (citing *State v. Lord*, 117 Wn.2d 829, 853, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992); *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990)). This claim would fail in any event because Arctic Stone's contract encompasses work the statute defines as a contractor's. *See* RCW 18.27.010(1); *Pope & Talbot, Inc. v. Productization, Inc.*, 74 Wn. App. 197, 200, 872 P.2d 78 (1994) (status as a contractor may be based on what a party contracted to do), *overruled in part on other grounds by Davidson v. Hensen*, 135 Wn.2d 112, 954 P.2d 1327 (1998).

[7] RCW 18.27.080.

[8] *Craftmaster Rest. Supply Co. v. Cavallini*, 11 Wn. App. 500, 502, 523 P.2d 962 (1974) (citing *Harbor Millwork, Inc. v. Achttien*, 6 Wn. App. 808, 496 P.2d 978 (1972)).

■ ¶8 There is no easy formula for determining whether something has or has not become "fabricated into" and a "permanent fixed part of a structure."[9] Factors include whether removal of the material would prevent its reuse or cause substantial damage to the structure,[10] whether the material is more of a decoration than an improvement,[11] and the parties' intent.[12] Materials and products that courts have found were not "fabricated into" and made permanent parts of structures include cold storage machinery that only needed to be bolted to the structure and plugged in,[13] synthetic turf gym flooring that could be removed without damaging the underlying concrete,[14] readily removable carpet,[15] and window and door shutter frames.[16]

■ ¶9 Here, Dadvar's affidavit included descriptions of the stone material, the labor-intensive manner in which it was installed (and in some cases, removed), and its purpose and use in the home. Cut pieces of granite and limestone

---

[9] *Harbor Millwork*, 6 Wn. App. at 814-15.

[10] *State ex rel. Vivian v. Heritage Shutters, Inc.*, 23 Ariz. App. 544, 546, 534 P.2d 758 (1975) (citing *Finley-Gordon Carpet Co. v. Bay Shore Homes, Inc.*, 247 Cal. App. 2d 131, 55 Cal. Rptr. 378 (1966); *Craftmaster*, 11 Wn. App. 500). Washington's CRA is virtually identical to its Arizona and California counterparts. *See* ARIZ. REV. STAT. §§ 32-1101-1170; CAL. BUS. & PROF. CODE, §§ 7000-7191.

[11] *Id.* (citing *Raby v. Westphall Homes, Inc.*, 76 N.M. 252, 254, 414 P.2d 227 (1966)).

[12] *Marston's Inc. v. Roman Catholic Church of Phoenix*, 132 Ariz. 90, 93, 644 P.2d 244 (1982) (citing *Craftmaster*, 11 Wn. App. at 503).

[13] *Costello v. Campbell*, 81 Cal. App. 2d 452, 184 P.2d 315 (1947).

[14] *Marston's Inc.*, 132 Ariz. 90. The synthetic turf came in large rolls and was attached to the prepared surface of the floor with an epoxy adhesive. *Id.* at 93. The court relied on evidence showing that the contractor reasonably relied on the state Attorney General's opinion that the installation of artificial turf under those circumstances did not require a license. *Id.* at 94.

[15] *Craftmaster*, 11 Wn. App. at 503 (the carpet was readily removable and was installed "with a specific eye [towards its] ease of removal"); *Finley-Gordon*, 247 Cal. App. 2d 131 (carpet could be easily removed without damaging the underlying floor because it had been installed using a "tackless strip method").

[16] *Heritage Shutters*, 23 Ariz. App. at 546 (the frames were attached to the structure with nails or screws so that any damage during removal was easily repaired with spackling compound).

were used for numerous purposes, including kitchen, bathroom, and bar countertops, four fireplaces, bathtub and Jacuzzi surroundings, stairs, and tubs and showers in four bathrooms. He stated that the stone became a permanent fixed part of the structure "to the same extent that wood, drywall, tile, brick or mortar is fully incorporated into the construction of a residence by any contractor, . . . [and] its removal would necessarily entail destruction or substantial damage to the material and the underlying structure." He testified that once installed, the stone could be removed only by breaking it apart with a crowbar, chisel, and hammer, and that sometimes the underlying wooden framework also broke during the removal process.[17] He demonstrated that the stone was not easily removed, that removal caused damage to both the stone and the underlying framework, and that the parties intended that the stonework be permanent and not merely decorative.

¶10 Arctic Stone did not rebut Dadvar's factual assertions with factual assertions of its own. It simply stated that whether the stone was "fabricated into" and became a "permanent part of the structure" is a factual determination. That is not sufficient to create a genuine issue of material fact. While we view the facts in the light most favorable to Arctic Stone, it did not come forward with any facts to view in its favor. There is no genuine issue of material fact about whether the stone was "fabricated into" and became a "permanent fixed part" of Dadvar's home. The trial court properly granted Dadvar's motion for summary judgment under RCW 18.27.090(5).

## II. *RCW 18.27.090(8)*

¶11 RCW 18.27.090(8) exempts from registration "[a]ny person who only furnished materials, supplies, or equipment without fabricating them into, or consuming them in the performance of, the work of the contractor . . . ." Arctic Stone argues that the trial court improperly granted

---

[17] Dadvar provided photos showing the stone in different parts of the home and the significant damage caused by its removal in several areas.

Dadvar's motion for summary judgment because there is a factual issue about who actually installed the stone. It contends that because it hired a registered contractor to install the stone, it furnished only the materials and therefore qualifies under the statutory exception. Dadvar argues that Arctic Stone does not qualify for the exemption because it contracted to install the stone. He also contends it is undisputed that Arctic employees did at least some of the installation work.

¶12 In *Harbor Millwork, Inc. v. Achttien*, the unregistered millwork company contracted to furnish millwork and cabinets for a new home.[18] The homeowner and a carpenter installed most of the items, but Harbor Millwork installed some of the cabinets. We held that RCW 18.27.090(8) exempted the company from the registration requirement for all items installed by the homeowner and carpenter, and remanded for a determination of whether the items installed by the millwork company were fabricated into and became a permanent part of the house.[19] We held that RCW 18.27.090 allowed the contractor to recover for exempt items even if other items under the contract were not exempt.[20]

¶13 In *Pope & Talbot, Inc. v. Productization, Inc.*, the parties entered into a contract under which Productization was to "construct" a wood waste fuel refinery.[21] A dispute arose after Productization had supplied materials, but before it began construction, and Pope stopped performance under the contract. Productization argued that it was exempt from registration under RCW 18.27.090(8) because it had supplied only materials. Division Two of this court rejected Productization's argument, holding that "whether a contractor falls within RCW 18.27.090(8) depends on

---

[18] 6 Wn. App. 808, 496 P.2d 978 (1972).

[19] *Id.* at 812.

[20] *Id.* at 816.

[21] 74 Wn. App. 197, 201, 872 P.2d 78 (1994), *overruled in part on other grounds by Davidson v. Hensen*, 135 Wn.2d 112, 954 P.2d 1327 (1998).

what the contractor offered, bid, or contracted to do, as opposed to the extent of the contractor's later performance."[22] The court distinguished *Harbor Millwork* because in that case the contractor agreed to supply only materials.[23] Because Productization had contracted to construct a fuel refinery, the court held it was required to register as a contractor.[24]

■■ ¶14 Here, the contract price included "all materials, labour, transport, taxes and installation."[25] This case differs from *Pope* because the contractual work that implicated the CRA—the installation—actually took place. It is unclear whether the *Pope* decision depended on this distinction. But to the extent it relies solely on the contractual language, even where there is actual performance, to determine whether the exemptions apply, we disagree with it. Although *Pope* correctly notes that RCW 18.27.010 provides that a person, firm, or corporation's status as a contractor may be controlled solely by what they contracted to do, that section defines only who a contractor is. RCW 18.27.090, defining the exceptions, has no similar provision. The statute's exemptions are just that: circumstances under which the general definition of a contractor does not apply. There is no public policy reason to deprive unregistered contractors of payment for materials they provide that are actually installed or otherwise used by registered contractors. To rule otherwise would give an undeserved windfall to property owners who get the benefit of the materials supplied. So long as the installer is a registered contractor, the property owner is protected in the manner the statute intends. We hold that *Harbor Millwork*'s rule applies in situations where, as here, an unregistered contractor con-

---

[22] *Id.*

[23] *Id.* at 201 n.7.

[24] *Id.* at 201.

[25] We note that a company could contract to "install" materials even though both parties intended that a different, licensed subcontractor would actually do the work.

tracts to perform CRA-governed work,[26] but the work is actually performed, in whole or in part, by a registered contractor.

¶15 Here, although Arctic Stone contracted to install the stone, Dadvar concedes that a registered contractor performed at least some of the installation. It appears from the limited record that is what the parties intended would happen. Applying the *Harbor Millwork* rule, RCW 18-.27.090(8) exempts Arctic Stone from the registration requirement for all the stone it supplied that was installed by the registered contractor. There is a genuine issue of fact about how much of the installation the registered contractor did. We remand for the trial court to make that determination. Arctic Stone may then recover for all of the stone used in the exempted work.

¶16 Arctic Stone also argues that it substantially complied with the CRA by hiring a registered subcontractor to perform the installation. "A contractor who fails to register is not barred from bringing an action if the contractor can prove substantial compliance—that is, conduct that satisfies the legislative purpose of the statute."[27] The CRA's purpose is to protect the public from " 'unreliable, fraudulent, and incompetent contractors.' "[28] In 1988, the legislature amended the CRA to codify the substantial compliance doctrine:

> For the purposes of this section, the court shall not find a contractor in substantial compliance with the registration requirements of this chapter unless: (1) The department has on file the information required by RCW 18.27.030; (2) the contractor has a current bond or other security as required by

---

[26] "CRA-governed work" includes all activities included in the definition of "contractor" in RCW 18.27.010 and not exempted under RCW 18.27.090.

[27] *Williamson, Inc. v. Calibre Homes, Inc.*, 106 Wn. App. 558, 564, 23 P.3d 1118 (2001) (citing *Expert Drywall, Inc. v. Brain*, 17 Wn. App. 529, 536, 564 P.2d 803 (1977), *review dismissed*, 92 Wn.2d 1004 (1978)), *aff'd*, 147 Wn.2d 394, 54 P.3d 1186 (2002).

[28] *Id.* at 565 (quoting *Murphy v. Campbell Inv. Co.*, 79 Wn.2d 417, 421, 486 P.2d 1080 (1971)).

RCW 18.27.040; and (3) the contractor has current insurance as required by RCW 18.27.050. . . .[29]

The CRA's purpose is satisfied when *the contractor seeking to maintain an action* has met the CRA's bonding and insurance requirements.[30] Whether a contractor has substantially complied with the CRA depends on the facts of each case.[31]

¶17 As the contractor seeking recovery, Arctic Stone had to allege facts that showed it, not a subcontractor, was covered by a surety bond and liability insurance. Having failed to do so, Arctic Stone cannot recover under a theory of substantial compliance.

¶18 We affirm in part and reverse in part, and remand for further proceedings.

APPELWICK and SCHINDLER, JJ., concur.

---

[29] RCW 18.27.080; LAWS OF 1988, ch. 285, § 2.

[30] *B.A. Van de Grift, Inc. v. Skagit County*, 59 Wn. App. 545, 549, 800 P.2d 375 (1990).

[31] *Id.* (citing *Expert Drywall*, 17 Wn. App. at 537); *Williamson*, 106 Wn. App. at 564 (citing *Expert Drywall*, 17 Wn. App. at 537).